NEWPORT TRUST COMPANY, Admr., *vs.* LEVINIA A. CHAPPELL ET AL.

JUNE 26, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)    Wills.    Trusts.    Vested Estate with Postponement of Possession.*

Testatrix bequeathed a moiety of her estate to her daughter A., and in case of her death, to her children, and the other moiety in trust for the benefit of her son B., providing that so long as her husband survived there should be no division of the estate, and the income should be divided between her husband, the trustee and A., with provision that if the trustee should become satisfied at any time, that B. had reformed, he should transfer the trust estate to him, but if the trust continued to the death of B. the residue of the trust to his issue, and if no issue then to A., and *further,* if A. deceased, leaving no issue, her portion of the estate should pass to the trustee for the purposes of the trust, but if the trust estate had been transferred to B., then the portion of A. should pass to B., and if both A. and B. deceased without issue, then all of the estate to the next of kin of A.

B. executed a deed of trust to pay the income to his wife C. during his lifetime, and upon his death to pay over the principal to C., or to such persons as he should by will appoint in the event of her death before him.

B. deceased, leaving C. surviving, but leaving no issue. *Held,* that A. received if living at death of testatrix a vested interest subject to the provision postponing the time of coming into possession until the death of her father, and that the children of A. took no interest in this portion of the estate in case A. survived testatrix.

*Held,* further, that the event of the death of A. contemplated in the later clause of the will providing in case of her death without issue that her portion should pass to the trustee, was to be referred to the lifetime of testatrix.

(2) *Spendthrift Trust.*

*Held,* further, that as to the moiety bequeathed in trust for B., the trust was so far modified that the trustee was only. to receive one-third of the income during the life of .the husband; that this provision for B. was in the nature of a spendthrift trust, and upon the facts disclosed, it appeared that the trust continued until the death of B.

(3) *Trusts. Trustees. Death of Trustee.*

*Held,* further, that the mere fact that no new trustee was appointed after the death of the original trustee did not operate to terminate the trust, for, being a trust for the protection of B., it would be assumed there was cause for its continuance until his death.

(4) *Trustees. Powers.*

*Held,* further, that under the provisions of General Laws, 1909, cap. 259, secs. 5, 8, a new trustee, had one been appointed, would have had the same power and discretion as the original trustee under the will, although such power and discretion being annexed to the office of trustee would have passed to a succeeding trustee in the absence of such statute.

*Held,* further that on the death of B. without issue, the moiety in trust for him became the property of A.

BILL IN EQUITY for construction of will. Certified under Gen. Laws 1909, cap. 289, § 35.

PARKHURST, C. J. This is a bill in equity brought by the Newport Trust Company, as administrator with the will annexed of the Estate of Abby D. Chappell, late of Newport, deceased, having in its possession as such administrator certain personal property which was bequeathed under said will, and asking for the appointment of a new trustee under said will and for instructions as to the proper disposition of said property; such disposition involves the construction of said will.

The bill was filed in the Superior Court in the county of Newport November 10, 1916, and, after answers were filed and testimony taken, was duly certified to this court, for its determination, under the provisions of Gen. Laws, R. I. (1909), Chap. 289, Sec. 35, as being ready for hearing for final decree.

It appears by admission in the pleadings that Abby D.

Chappell, late of Newport, died May 10, 1904, leaving the last will referred to, and that the same was duly admitted to probate June 13, 1904; and that James H. Chappell, husband of the testatrix, named as executor in the will, was duly appointed and qualified and thereafter acted as such executor until his death, and died intestate September 20, 1914, without having fully administered the estate, leaving as his only heirs at law and next of kin said Ida Douglas Jack and said Henri Q. Chappell; and that the complainant, on October 5, 1914, was duly appointed and qualified as administrator with the will annexed; that as such administrator it received the sum of $6,495.91 as the property of the estate of said Abby D. Chappell and has since held and now holds said estate.

It further appears that Henri Q. Chappell (son of the testatrix), one of the beneficiaries named in said will, on November 9, 1914, made a deed of trust of all his property, " whether legal or equitable in fee or in remainder " to said Newport Trust Company, in trust to pay the net income thereof to his wife, the respondent Levinia A. Chappell during his lifetime and upon his death to pay over the principal of said trust fund, or what should remain thereof, to said Levinia, or to such person or persons as he should by his last will appoint in the event of her death before him.

It further appears that said Henri Q. Chappell died at Newport February 28, 1916, leaving his wife Levinia surviving him but leaving no children or issue of children surviving him, and that he left a will in which he gave all his property to his wife, but said will has never been offered for probate.

The said Abby D. Chappell and James H. Chappell had two children, a daughter Ida Douglas Chappell and a son Henri Q. Chappell; the daughter married; and in her mother's will she is named as Ida Jack of Washington in the District of Columbia; it appears also that she sur-

vived her mother and her father and her brother and was still surviving at the time when this bill was filed and so far as appears she still survives.

The said Ida Douglas Jack and the said Levinia A. Chappell are the sole parties named as respondents in the bill.

The will provides as follows:

" This is the last will and testament of me, Abby D. Chappell, wife of James H. Chappell, of Newport, Rhode Island.

" 1st. Subject to the payment of my just debts, if any, and all proper charges against my estate, I give devise and bequeath the one moiety of any property, of every kind, real and personal, wheresoever situated or being, belonging to me at the time of my decease, whether acquired prior or subsequent to the execution of this will, to my daughter, Ida Jack of Washington in the District of Columbia, and in case of the death of said Ida I give devise and bequeath the same to her children.

" 2nd. I give devise and bequeath the other moiety of my property, of every kind, real and personal, wheresoever situated or being, belonging to me at the time of my decease, whether acquired prior or subsequent to the execution of this Will to my husband James H. Chappell *in trust,* for the benefit of my son Henri Q. Chappell of said Newport.

" 3rd. It is my will that so long as my husband shall live that there shall be no division of my estate and the rents, income and profits thereof, shall be divided equally between my husband, my daughter, and said trustee. I also direct, that if the said trustee shall become fully satisfied at any time, that my son Henri has fully reformed his life, so that he can safely be trusted with the management of property and this trust, that he transfer said property to my son as fully as if it had never been created, and that the same thereby terminate.

"4th. It is my will, that if said trust shall continue until the death of said son, if he leave issue, the residue of said trust shall be transferred to said issue; if he leave no issue, the residue shall become the property of my daughter Ida.

"5th. It is my will and I so direct that, if my daughter Ida shall decease leaving no issue, her portion of my estate shall go to said trustee, in trust, as aforesaid. But if said trust has been surrendered by the trustee as provided in this will, then the portion of said Ida shall go to said Henri direct. If both of my children die without issue, I give devise and bequeath all of said property not expended to the next of kin of said Ida according to the present statutes of this State, excluding her husband from any part share and right therein.

"6th. Finally I nominate and appoint my husband James H. Chappell to be the sole executor hereof without giving any bond, and to carry out the provisions hereof as strictly as may be; and I revoke all other former wills by me made, and publish, and establish this, and this only, as my last.

"Witness hand and seal this 25th day of June A. D. 1887.

                    "Abby D. Chappell.   LS."

The will bears the usual witness clause and names of witnesses.

It is undisputed that all the property which passed under the will was personal property; and all the property now held by complainant is personal property.

The complainant in its bill contends that the estate of Abby D. Chappell in its hands after deducting the expenses of administration should be turned over to a trustee to be appointed by the court to hold in trust to pay the income to Ida Douglas Jack during her lifetime and upon her death to pay the principal to her issue living at

her death, and in default thereof to her next of kin, as provided in the 5th clause of the will.

The respondent Ida Douglas Jack by her answer claims the whole of the fund in the hands of the complainant, after deducting the necessary expenses of administering said estate.

The respondent Levinia A. Chappell is under guardianship, and William M. Arnold the guardian of her person and estate has been brought in as a party respondent; he makes answer as guardian claiming on her behalf that she is entitled to have paid over to her after deducting the expense of administration one moiety of the estate under the provisions of the will.

(1) At the first reading of the will above set forth, it seems to be somewhat confusing and inconsistent in its several provisions. But upon a careful consideration thereof we are of the opinion that the intention of the testatrix quite clearly appears.

The scheme of the will is to divide the estate into two parts one of which is by the 1st clause, as we construe it, bequeathed to Ida Jack if living at the death of testatrix; if Ida is not then living, to Ida's children; the other part is by the 2nd clause bequeathed to James H. Chappell, husband of testatrix, in trust for the benefit of her son Henri Q. Chappell. This scheme is, however, modified and suspended in its fullfilment by the 3rd clause which evinces a primary and paramount intention temporarily to suspend the division of the estate during the lifetime of her husband, and to leave the estate undivided in his hands during his lifetime and to divide the rents, income and profits equally between her husband, her daughter and her husband as trustee for Henri; and this provision is also subject to the direction to said trustee to transfer the one-half of the estate bequeathed in trust for the benefit of Henri to him if " the said trustee shall become

fully satisfied at any time, that my son Henri has fully reformed his life " *&c.*

As we construe these provisions, we find that it was the intention of the testatrix to give to her daughter Ida Douglas Jack, if living at the death of testatrix, a vested interest in one-half of the estate, subject to the provisions of the 2nd clause, which postponed the time when Ida should come into possession until the death of her father; and inasmuch as Ida survived her father, she became entitled at his death to have this one-half turned over to her, less such charges and expenses of administration, if any, as would be properly chargeable against the same. We think it clear that there was no intention on the part of testatrix to postpone Ida's enjoyment of this one-half of the estate beyond the death of her father, and that Ida's children took no interest in this portion of the estate in case Ida survived her mother.

The provisions in clause 1st and clause 5th are somewhat analogous to the provisions construed in the case of *Harris* v. *Dyer,* 18 R. I. 540, 542, where it was said: " There have been a number of cases of devises where a gift to one in fee has been followed by a gift over in case the devisee die with or without issue, in which the event of death has been referred to the lifetime of the testator." (Citing numerous cases.)   " This construction has been adopted to avoid repugnancy, inasmuch as the alternative limitations over, if not so qualified or restricted, would reduce the prior devise from a fee to a life estate. It is based on the obvious reason that if the testator had intended to give only a life estate in the first instance he would have said so in the terms of the gift itself."

We are of the opinion that the bequest in the 1st clause, gave an absolute estate to Ida in the one moiety of the estate therein bequeathed in the event that she survived her mother, with the right to the possession thereof postponed under clause 3rd to the time of her father's

death; and that in the provisions of the 5th clause directing that " if my daughter Ida shall decease leaving no issue, her portion of my estate shall go to said trustee," *&c.*, the event of Ida's death therein contemplated, is to be referred to the lifetime of the testatrix.

As to the one moiety of the estate bequeathed by clause 2nd to James H. Chappell in trust for the benefit of Henri Q. Chappell, it is clear that this trust is so far modified (2) by the language of the 3rd clause, that the trustee for Henri was only to receive one-third of the income for the benefit of Henri, so long as the husband of testatrix lived; it is further clear that the trust constituted in the 2nd clause and modified in the 3rd clause was in the nature of a spendthrift trust, as indicated by the words directing the transfer to Henri " if the said trustee shall become fully satisfied at any time, that my son Henri has fully reformed his life," *&c.* There is nothing in the record to show that Henri ever did fully reform his life so as to give effect to the provision for the transfer of one-half of the estate to him; and in view of the fact that the trust was never terminated during the lifetime of the father, trustee, and that it does not appear that Henri ever claimed or attempted to have the trust terminated either during his father's lifetime or afterward, we are of the opinion that the trust continued until the death of Henri, and that never at any time was he entitled to have the trust terminated by the transfer of one-half of the estate to him. The mere fact that no new trustee was (3) appointed after his father's death did not operate to terminate the trust. Being a trust for the protection of Henri against his own improvidence and incapacity, we may assume that there was a reason for its continuance, until his death. After his father's death he was entitled to receive the income from one-half of the estate; and it does not appear that he did not so receive it. The making of his trust deed to the complainant, November 9,

1914, after the death of his father, and after the complainant was appointed administrator with will annexed of the estate of Abby D. Chappell, and had received the estate into its custody as such administrator, simply operated so far as this property was concerned, to transfer Henri's right to the income of one-half of the estate to the trustee for the benefit of the wife Levinia; it may be that other property was conveyed by this trust deed; as to that the record is silent. But the making of this trust deed did not operate to terminate the trust, which could only have been terminated under the terms of the will by the act of a trustee in the event that such trustee should have become " fully satisfied at any time, that my son Henri has fully reformed his life, so that he can safely be trusted with the management of property," &c. It was the plain intent of the testatrix that only in such event should one-half of her property be transferred to Henri free of trust. A trustee to administer this trust under the will could have been appointed if the parties in interest had so desired; in view of the fact that the estate consisted only of personalty in the hands of the complainant as administrator, it was probably deemed unnecessary. No claim is made that the income of the one-half of the estate was not after November 9, 1914, paid over by the complainant to Levinia so long as Henri lived.

As to the continuance of the trust and the appointment of a new trustee after the death of James H. Chappell, the case is analogous in principle to the case of *Burdick* v. *Goddard*, 11 R. I. 516, where a trust of personal estate was created under the Halsey will for the benefit of a married woman, to pay over to her " for her sole and separate use and benefit, and upon her sole and separate receipt and discharge, such part of said fund, whether of interest or principal, or both, at such times and in such sums as they in their discretion shall consider expedient, necessary, and proper." It appeared that in the lapse

of time all of the original trustees had died, the fund was on deposit, and was in the control of the executors of the last surviving trustee; that the *cestui que trust* had become a widow and had married again and was covert at the time of filing the bill, which asked for a termination of the trust by payment of the whole fund to the complainant, Mrs. Burdick, with an alternative prayer for the appointment of a new trustee, and defining his powers. It was held that the powers and discretions given to the trustees to pay over the fund as above set forth were essential to the purposes of the trust, and passed to the successors in trust of the original trustees; that the trust extended over the new coverture, and that, the original trustees being dead, the court would appoint a new trustee with the powers given by the will, but would not order the trust fund paid over to the beneficiary to end the trust. See, also, *Blakely, Petitioner,* 19 R. I. 324; *Smith* v. *Hall,* 20 R. I. 170, 173.

(4)  It may be noted that after the decision of *Burdick* v. *Goddard, supra* (1877), a statute (Gen. Laws, 1896, Chap. 208, Sec. 5, Sec. 8 in operation on and after February 1, 1896), was enacted whereby it was provided (Sec. 5) that every trustee appointed pursuant to the provision of that chapter shall have the same powers, authorities and discretions, and may in all respects act as if he had been originally appointed a trustee by the instrument, if any, creating the trust; and Sec. 8 provides that the preceding seven sections shall apply to trusts heretofore as well as those hereafter created, and shall be considered in addition to the ordinary equity powers of a court of chancery. (*Smith* v. *Hall, supra,* p. 173; see, also, 28 R. I. 521; 29 R. I. 220.) The same statute was re-enacted in Gen. Laws 1909, Chap. 259, Sec. 5, Sec. 8 in operation December 31, 1909. This statute was in force at the death of James H. Chappell in 1914, and now remains in force, and under it it is clear that a new trustee, had one been ap-

pointed under the will in place of James deceased, would have had the same powers and discretions as he had.

We are of the opinion that it was clearly the intention of the testatrix to protect her son Henri from his own lack of capacity in the management of property, and to provide for the continuance of the trust during his life except in the event that he should have " fully reformed; " that the power and discretion vested in the trustee under her will to transfer to Henri free of trust was a power and discretion annexeu to the office of trustee, and would have passed to a succeeding trustee, in the absence of the statute above referred to, inasmuch as without such power the purposes of the trust might have been defeated. The question whether Henri Q. Chappell had " fully reformed in his life " could have been as well determined by a successor in the trust as by the original trustee.

We therefore find that the trust continued until the death of Henri Q. Chappell (4th clause); that at his death he left no issue; and that accordingly at his death the one-half of the estate held in trust for Henri became the property of Ida Douglas Jack.

In view of the foregoing, under the facts, the 5th clause has no effect, none of the conditions therein enumerated having happened.

Our opinion is that Levinia A. Chappell has no estate or interest in the fund in the hands of the complainant; that Ida Douglas Jack is entitled to receive the whole fund, after deduction of the necessary expenses of administering the estate; that Ida Douglas Jack is entitled to an accounting from the complainant unless the complainant and she can agree upon a settlement; that inasmuch as the trust terminated at the death of Henri Q. Chappell there is no need of the formal appointment of a trustee under the will, since all of the fund is in the hands of the complainant, and the complainant can settle

an account with Ida Douglas Jack without the intervention of any new trustee.

The parties may present for our approval a decree in conformity with the above on Monday, July 2, 1917, at ten o'clock in the forenoon.

*Burdick & McLeod,* for complainant.

*Sheffield & Harvey,* for Levinia A. Chappell.

*Charles H. Koehne, Jr., William Williams,* for Ida Douglas Jack.